IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 10-00421 MCF |
| HENRY RICK ORASI | CHAPTER 7 |
| Debtor | |
| CADLEROCK JOINT VENTURE LP | ADVERSARY NO. 11-00085 |
| Plaintiff | |
| v. | |
| HENRY RICK ORASI | FILED & ENTERED ON 04/01/2013 |
| Defendant(s) | |

**OPINION AND ORDER**

Before the Court is the adversary complaint filed by the Plaintiff Cadlerock Joint Venture, L.P. (hereafter "Cadlerock") objecting to the discharge of Defendant, Henry Rick Orasi, (hereafter "Debtor"), pursuant to 11 U.S.C. § 727(a)(2), (3), (4), (5) and/or objecting to the discharge of its claim, pursuant to § 523(a)(2).[1] For the reasons set forth below, this Court denies Cadlerock's objection to dischargeability.

**I. FINDINGS OF FACT**

1. Debtor, is a real estate investor and hotelier, based in

---

1 Unless otherwise indicated, all statutory references are to title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (the "Bankruptcy Code").

1

Carolina, Puerto Rico.

2.  After opting for an early retirement from his previous career in 2005, Debtor delved into the real estate business and created Orasi Investments L.L.C. ("Orasi Investments").

3. Debtor obtained capital to fund his real estate investments from liquidating his retirement funds, liquidating stock options and from his mother, Mercedes Orasi, who "let him use her money."[2]

4.  From 2004 to 2007, Debtor purchased and re-sold several real estate properties in his personal capacity and by way of Orasi Investments.

5.  Debtor represented his mother in various real estate investments; as such their accounts became intertwined.

6.  Debtor bought several properties with his funds, some with his mother's funds and others with both of their funds.

7.  Debtor transferred the following three parcels of real estate to his mother, on October 14, 2008: Lots #38 and #278 at Calusa Campground Condominium, Calusa St. Key Largo, Fl. 33037 and lot #233 Yellowtop Mountain Estates, Phase Fourteen Bostic City, Rutherford County, N.C. (the "Real Properties").

8. The Real Properties were recorded under Orasi Investments, with his mother's acquiescence, so they could be used as collateral to obtain capital to make other real estate investments, since the

---

2 Hearing of September 19, 2012, Transcript at 90 (Docket No. 90).

2

properties were clear of any liens.

9.   In 2004, Debtor transferred physical possession of a Mercedes CLK to his mother because he was leaving the United States to Mexico for a business assignment and said vehicle would be more comfortable for her to use in transporting his two children, as opposed to her current vehicle.

10. On April 14, 2009, Debtor transferred the title of the Mercedes CLK vehicle to his mother.

11. As part of his strategy to diversify into the hospitality industry, Debtor purchased 100% of three business entities in Puerto Rico, namely the Green Isle Inn, Inc. ("Green Isle"), Casa Mathiesen S.E. ("Casa Mathiesen") and the Mango Inn ("Mango Inn") which were operated under the Green Isle banner.

12.   Debtor filed a voluntary petition under Chapter 7 on January 26, 2010, due to his inability to comply with his financial obligations and due to several collection actions pursued by creditors against him.[3]

13.   Three separate 341 meetings of creditors were held on February 23, 2010, March 25, 2010 and May 13, 2010.

14.   Debtor presented all the documentation requested by the appointed Chapter 7 Trustee regarding his personal and business transactions.

---

3 Case No. 10-00421.

3

15.  On April 24, 2010, the appointed Chapter 7 Trustee filed a report of no Distribution (Docket No. 83 in the legal case).

## II. PROCEDURAL HISTORY

Cadlerock is an Ohio based limited partnership that holds an unsecured claim against the Debtor for $508,895.23.[4]  On April 8, 2011, Cadlerock filed the instant adversary case (Docket No. 1). Debtor answered the complaint and filed a counterclaim on May 5, 2010 (Docket No.6).  A Joint Pre-Trial Memorandum was filed by the parties on April 9, 2012 (Docket No. 75).

Debtor's counterclaim was dismissed on the merits on April 26, 2012 (Docket No. 76), leaving Cadlerock's complaint as the only matter to be resolved by this Court.

During the course of the evidentiary hearing held on September 19, 2012, the Court heard the testimony of the Debtor, Plaintiff's expert witness Certified Public Accountant, Diego Perdomo Ferrer ("Perdomo"),  and  Cadlerock's  employee,  Jaime  Waltermire ("Waltermire").  The parties presented their closing arguments on September 27, 2012, and filed their post-trial briefs on November 16, 2012 (Docket No. 91) and November 21, 2012, (Docket No. 92) respectively.

---

4 Cadlerock filed Proof of Claim No. 4 based on a final judgment entered by the Circuit Court of Miami-Dade County, Florida, on March 3, 2009, Case No. 08-73438-CA-13.

### III. JURISDICTION

The Court has jurisdiction to hear this case, pursuant to 28 U.S.C. § 157(a)(3) and the general order of the United States District Court dated July 19, 1984, which refers title 11 proceedings to the Bankruptcy Court (Torruellas, C.J.). This is a core proceeding, pursuant to 28 U.S.C. § 157(b).

### IV. CONCLUSIONS OF LAW

A. Objection to Discharge under § 727

In a complaint objecting to discharge under Section 727 of the Bankruptcy Code, the plaintiff has the initial burden of proving the objection.[5]  Most courts have held that this burden may be met under a preponderance of the evidence standard.[6] If the plaintiff fulfills this standard, the burden shifts to the debtor who has the obligation of justifying his right to a discharge. However, § 727 is generally construed liberally in favor of the debtor and strictly against the creditor.[7]

Cadlerock is requesting that this Court deny Debtor's right to a Chapter 7 discharge under § 727(a)(2), (3), (4) and (5).  We will discuss Cadlerock's allegations under each applicable sub-section of § 727 separately in the order established above.

---

5 Fed. R. Bankr. P. 4005.
6 6-727 Collier on Bankruptcy ¶ 727.01.
7 Commerce Bank & Trust Co. v. Burgess (In re Burgess), 955 F.2d 134 (1st Cir. 1992)(quoting Dilworth v. Boothe, 69 F.2d 621 at 624 (5th Cir. 1934)).

B. <u>Transfer with Intent to defraud, hinder or delay (§ 727(a)(2)(A))</u>

Cadlerock moves the Court to deny Debtor's discharge for transfers of property with the intent to hinder, delay or defraud creditors, pursuant to § 727(a)(2)(A).[8] Cadlerock specifically alleges that Debtor made several transfers of real and personal property with intent to hinder, delay or defraud its creditors. First, Cadlerock alleges that Debtor transferred three Real Properties to his mother, on October 14, 2008, without any contractual cause.

Section 727(a)(2)(A) provides for the denial of a discharge to a debtor that has transferred or concealed property with intent to hinder, delay or defraud a creditor, within one year before the filing of the petition.[9] The alleged fraudulent transfers must be completed within the year prior to the filing of the bankruptcy petition in order to qualify for a denial of discharge. The transfers of the three Real Properties were completed on October 14, 2008, and Debtor's Chapter 7 bankruptcy was filed on January 26, 2010. The transfer of the Real Properties occurred over a year before the filing of the petition and as such, the Court concludes that § 727(a)(2)(A) does not apply to the transfers of the Real

---

8 Cadlerock failed to make any reference to § 727(a)(2)(A) in its complaint (Docket #1) and in the Pre-Trial Report (Docket No. 75). It is not until Plaintiff's post-trial briefs (Docket No. 92) that Cadlerock moved the Court to deny Debtor's discharge pursuant to § 727(a)(2)(A).
9 11 U.S.C. § 727(a)(2)(A).

6

Properties.

Even if the objectionable act took place more than a year before bankruptcy, it could still provide a basis for objection to discharge if there is a continuing concealment.[10] However, this is not the case here since Debtor disclosed the transfers in his schedules. Therefore, in both scenarios, the Bankruptcy Code precludes the application of § 727(a)(2)(A) to the transfer of the Real Properties.

Additionally, Cadlerock alleges that Debtor transferred title ownership of a 2003 Mercedes CLK to his mother on April 14, 2009, after Cadlerock's employee, Waltermire, called him and mentioned that they were aware of his ownership of The Green Isle Inn and other assets.

Debtor testified that he had disclosed and repeatedly explained the reasons for transferring the vehicle to his mother, which preclude a finding of actual intent to hinder delay or defraud. Debtor testified, that upon his move to Mexico for a business assignment in 2004, he gave his vehicle to his mother since she would be taking care of his two children while he was away. The Mercedes CLK (a four seater), was larger and more comfortable than her current Mercedes SLK (a two seater), which Debtor had also bought for her.  Debtor's mother still owns the

---

10 Rhode Island Depositors Econ. Protection Corp. v. Hayes (In re Hayes), 229 B.R. 253 (B.A.P. 1st Cir. 1999).

Mercedes CLK and her previous car was sold by Debtor.

Debtor transferred the title of the Mercedes CLK six months after Waltermire had called him to inquire about his assets. This fact establishes no urgency to transfer the vehicle due to actual intent to defraud, hinder or delay. Physical possession of the vehicle had been transferred to his mother five years earlier. We conclude that based on these aforementioned facts there is no actual intent to defraud, hinder or delay on the part of the Debtor.

Moreover, at the date of the filing of the petition, the vehicle was at least seven years old and its value was estimated at $8,000.[11] Fraudulent intent is usually negated when the property transferred is of relatively nominal value.[12]  Considering the amount of the total indebtedness of the estate and the depreciated value of the car, the Court concludes Cadlerock did not meet its burden to establish fraudulent intent in relation to the transfer of the vehicle, pursuant to § 727(a)(2)(A).

C. Keeping & Preserving Accurate Records (§727(a)(3))

Section 727(a)(3) provides in its pertinent part for the denial of a discharge if a "debtor has concealed…failed to keep or preserve any recorded information…from which the debtor's financial

---

11 Transcript of 341 meeting held on March 25, 2010(Plaintiff's Exhibit No. 10). The estimated value of the car was not disputed by the Trustee or any creditors.
12 Robertson v. Dennis (In re Dennis), 330 F.3d 696 (5th Cir. 2003).

condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."[13]  "The purpose of § 727(a)(3) is to give creditors, the trustee and the bankruptcy court complete and accurate information concerning the debtor's affairs and to ensure that dependable information is provided so that the debtor's financial history may be traced."[14]

The objecting party need not establish intent of any kind under this particular provision.[15] Once the objecting party has proven that the debtor concealed or failed to preserve any recorded information that can ascertain his financial history, the burden shifts to the debtor to demonstrate that the failure to keep records was justified under the circumstances.[16]  While a debtor may justify his failure to keep records in some instances, the bankruptcy court may grant a discharge "only if the debtor presents an accurate and complete account of his financial affairs."[17]

Cadlerock claims that Debtor has failed to provide financial statements or other evidence of value concerning the entities, Green Isle, Casa Mathiesen and Orasi Investments. Cadlerock also

---

13 11 U.S.C. § 727(a)(3).
14 Canha v. Gubellini (In re Gubellini), 2009 Bankr. LEXIS 3706, (B.A.P. 1st Cir. Nov. 23, 2009)(citing Meridian Bank v. Alten, 958 F.2d 1230 (3d Cir. 1992)).
15 Id.(citing Lassman v. Hegarty (In re Hegarty), 400 B.R. 341 (Bankr. D. Mass. 2008)).
16 Id.
17 In re Schifano, 378 F.3d 60 (1st Cir. 2004)(citing Meridian Bank, 958 F.2d at 1230).

9

questions the fact that the Debtor did not provide a recent appraisal for these businesses.  It also claims that Debtor failed to provide information regarding the transfer of the Real Properties to his mother, including the source of the money to acquire the properties. Finally, Cadlerock alleges that Debtor intermingled his personal, financial dealings, transactions and monies with that of his mother's so that it would be impossible to have a clear financial record of the Debtor.

Debtor stated that he had provided all the records and documentation requested by the Chapter 7 Trustee.  These records included the financial statements for Green Isle, his personal tax returns and evidence to prove all the funds used to purchase properties and the revenues generated from their sale. As a good faith gesture, Debtor was assisted, at the 341 meeting of creditors held on March 25, 2010, by his certified public accountant, Carlos Gonzalez Sanchez, and his financial advisor, Angel Alvarez Rivera, so that they could explain the information contained in his financial statements.

Although Debtor's bookkeeping methods are not necessarily practical and on occasions confusing, he was able to produce all the necessary documentation that was solicited by the Trustee to sustain the information contained in his Chapter 7 petition. Debtor showed willingness to cooperate with the Trustee's requests,

10

including preparing a flowchart of cash inflows and outflows from Debtor's accounts to summarize the extensive documentation provided. Debtor provided the most recent financial statements of Green Isle Inn, which owned and managed Casa Mathiesen and purchased the Mango Inn's assets, his corporate and individual tax returns, which included his tax obligations for Orasi Investments (as a sole proprietor) and even produced his mother's tax returns and the checks she issued for the purchase of the transferred Real Properties. The Trustee inquired about all the properties that the Debtor had transferred, bought or sold, including short sales and foreclosures, and was apparently satisfied with the answers she received so as to file a report of no distribution.[18]

Cadlerock conducted discovery, which was even more extensive having deposed Debtor and his mother in relation to the Florida State Court case.[19]  Moreover, after three separate 341 meetings were held, Debtor was examined, pursuant to Fed. R. Bankr. P. 2004, by Cadlerock whereby the transfer of the Real Properties was not even discussed.

Although Debtor's accounts may have been intertwined with his mother's accounts, the ample records produced were enough to

18 Docket No. 83.
19 Deposition  of July 9, 2009, in relation to Cadlerock Joint Venture, L.P., v. Henry R. Orasi, Case No. 08-73438-CA-13, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami Dade County Florida, Plaintiff's Exhibit No. 8).

11

determine that the Real Properties were purchased and his management costs are assumed by his mother. Debtor provided dependable information on which a creditor can rely in tracing the debtor's financial history, including the necessary financial information regarding the properties and entities under the Green Isle.  If anything, the Debtor provided an abundance of information, which could overwhelm an external party not familiar with the Debtor's dealings.

Cadlerock had ample opportunity to review and examine all the documentation and clarify any doubts it had regarding the Debtor and his business endeavors.  Cadlerock did not prove that Debtor concealed or failed to preserve business records that can ascertain his or his corporation's financial history.  Consequently, Cadlerock's allegations under § 727(a)(3) are denied for failing to prove that Debtor failed to keep or preserve records regarding Debtor's financial condition and business transactions.

D. Fraudulent Oaths and Accounts (§727(a)(4))

The applicable text of § 727(a)(4) bars the debtor from obtaining a discharge if he knowingly or fraudulently has (A) made a false oath or account;…(D) withheld from the Trustee any recorded information."[20] The plaintiff must prove not only that an omission

---

[20] 11 U.S.C. § 727(a)(4).

12

was made, but that it was omitted both knowingly and fraudulently. "In order to deny a debtor's discharge, falsehoods must be intentional and with regard to matter material to the case, or in manner evidencing reckless and careless disregard for truth."[21]

Cadlerock alleges that Debtor lied under oath when he knowingly undervalued the value of his shares in the three entities when he filed the Chapter 7 petition.  Cadlerock also alleged that Debtor made several false statements under oath when he failed to account for corporate benefits he received from his business in Puerto Rico such as mortgage payments, a corporate credit card, and cell phone payments. Lastly, Cadlerock alleges that Debtor included a car insurance expense in his schedules when he owns a motorcycle and not a car.

Debtor disclosed the transfer of the vehicle and the reasons for the transfer in the deposition of the Florida State Court case and at the 341 meeting held on March 25, 2010.  The car had been in possession of his mother for over 5 years and the title was transferred six months after Waltermire's call and nine months prior to the filing of the bankruptcy petition.

Debtor again testified that the valuation of the companies was a nominal value since he understood that the business entities had more debt than assets. Debtor clarified that he has a corporate

---

[21] In re Clawson, 119 B.R. 851 (Bankr. M.D. Fla. 1990).

13

mobile phone and a corporate credit card that are used for corporate purposes. Debtor and his accountant testified at the 341 meetings that Debtor's house is part of the "complex" of properties owned and managed under the Green Isle in Puerto Rico. The property is rented out and the revenue is received by the corporation. When Debtor is in Puerto Rico, he stays in an apartment located in the house. They explained that the capital investments that Debtor has contributed from his own funds are netted against the rent not collected when Debtor is in the apartment. As for the car insurance, Debtor claims it was an error in the petition.

"The existence of false or inaccurate statements is not, in and of itself, sufficient cause to deny a debtor's discharge unless it is shown that these were knowingly and fraudulently made."[22] A determination concerning the presence of fraudulent intent largely depends upon an assessment of the credibility and demeanor of the debtor."[23] Debtor's testimony was consistent credible throughout the various legal proceedings and the Court found it credible. Cadlerock's claim that Debtor transferred his Mercedes CLK motivated by Waltermire's call is not enough, in itself, to prove

---

[22] <u>Santana Olmo v. Quinones Rivera (In re Quinones Rivera)</u>, 184 B.R. 178, 185 (D.P.R. 1995)(citing <u>Burgess</u>), 955 F.2d 136, <u>abrogated on other grounds</u>, <u>Field v. Mans</u>, 516 U.S. 59, 133 L. Ed. 2d 351, 116 S. Ct. 437 (1995); <u>In re Tully</u>, 818 F.2d 110 (1st. Cir. Mass. 1987).
[23]<u>Premier Capital, Inc. v. Diamond (In re Diamond)</u>, 106 Fed. Appx. 73, 2004 U.S. App. LEXIS 14316 (1st Cir. N.H., 2004)(<u>citing Burgess</u>, 955 F.2d at 137).

14

fraudulent intent, especially since the transfer of the car's title was completed six months afterwards. Corporate phones and credit cards are not required to be scheduled on the Debtor's assets since they belong to the corporation. As for the remaining allegations, Debtor discussed and clarified them in the 341 meetings and even if they were erroneously filed, the Court concludes that fraudulent intent was not proven by Cadlerock.

### E. Failure to Explain Loss or Deficiency of Assets (§ 727(a)(5))

According to § 727(a)(5), the discharge will also be denied if a debtor fails to explain satisfactorily, any loss or deficiency of assets.[24]

Cadlerock alleges that Debtor has failed to satisfactorily explain why he listed his participation under each of the three entities, Green Isle, Casa Mathiesen and Orasi Investments for one dollar each in his schedules. Plaintiff alleges that the value of the three entities is more than Debtor is disclosing and the value of his participation in them is therefore proportionally more than what the schedules reflect.

In order to support its allegations, Cadlerock presented the testimony of its expert witness, Perdomo. Perdomo testified that, according to his analysis, the Green Isle was worth at least $4.8

---

24 11 U.S.C. § 727(a)(5).

15

million dollars.  He testified that because Debtor does not list the mortgage loan on schedule D as being partially unsecured, he concluded that the collateral securing the loan had a market value in excess of $4.3 million.[25]  Furthermore, he concludes that "to reach a value indication of the common stock of the company, you have to add to the stockholder's equity whatever difference you may have between the market value of the assets and the book value of them.  That's why [I] add over $4 million to the book value of $847,000 as of January 31, 2010."[26]  Perdomo added that depending on the appraisals of the collateral the value of the corporation could be higher.  Furthermore, Perdomo stated that it could not evaluate Orasi Investments L.L.C. or Casa Mathiesen S.E. since it did not have any financial information regarding those legal entities.

Debtor explained that the one dollar valuation of the shares of each of the entities is a nominal amount, since the entities had more liabilities than assets. He explained that he had over $7.8 million dollars in loans guaranteed by the real property of the Green Isle. Debtor testified in several occasions that in 2006, he obtained a loan and cashed in his investments to purchase the Green Isle and Casa Mathiesen, which was absorbed by the Green Isle Inn in hopes of converting the whole block into a larger hotel complex.

---

[25] Transcript of Evidentiary Hearing held on September 19, 2012, at 12. (Docket No. 90).
[26] Id. at 12.

16

In 2007, The Green Isle Inn, Inc. obtained a second loan and purchased the real estate properties owned by The Mango Inn, and integrated these properties into the Green Isle. This second mortgage loan was also guaranteed by the properties of the Green Isle. As such, the total secured debt owed to Westernbank for the entities operated under the Green Isle was $7.8 million dollars. Debtor testified that the properties of the Green Isle had decreased in value and although he had no current appraisals, he used recent comparable sales in his area to estimate the drop in value of the properties to be around 20%.

Debtor further explained at the hearings and through his accountant and his financial advisor at the 341 meeting of creditors that the hotel operations were not enough to cover operating expenses and mortgage payments due to a decline in hotel occupancy and aggressive competition. Debtor also asserted that Orasi Investments, has closed its operations and does not own any assets. Furthermore, since it was a sole proprietorship, he reported the earnings in his personal taxes, which were provided, as requested, to the Chapter 7 Trustee.

Perdomo's testimony was unclear and unconvincing. Perdomo testified that he used the value of the outstanding debt included in schedule D and the Stockholder's equity to estimate the value of the corporation at $4.8 million, and thus refute the "one dollar"

17

valuation listed by Debtor.  However, he failed to include the other loans from Westernbank which represent additional debt of $584,852.34 secured by the properties of the Green Isle. He also did not include in his valuation the debt incurred by the Green Isle to purchase the Mango Inn, which is also guaranteed by its properties.  Perdomo did not have any recent appraisal to support his valuation and failed to account for the depreciation of the properties that guarantee the loans for the bank obtained during the 2006 boom of the real estate market.

The Court is satisfied with Debtor's explanation that his business entities have more debts than assets. Consequently, Debtor will not benefit or profit from the possible sale of the Green Isle and at this point his shares are worth a nominal amount.  As such, and under these specific circumstances, Debtor has satisfactorily explained the lost value of the shares, the decline in his business revenue and the reduced value of the real estate properties; thus, Cadlerock's claim based on § 727(a)(5) is denied.

F.  Exceptions to Discharge (§ 523 (a)(2))

In its relevant parts § 523(a)(2) sets forth that an individual debtor is not discharged under § 727 for any debt for money, property or an extension of credit if it is obtained by false pretenses, false representations or fraud. A creditor must

18

establish all elements of fraud and may not avoid demonstrating justifiable reliance or injury simply by asserting non-dischargeability based on the totality of the circumstances test, including the fact that the debtor transferred property to avoid paying the obligation.[27]

Cadlerock's allegations under § 523(a)(2) are presented as an alternative means for the Court to deny dischargeability to the Debtor if its actions under § 727 do not prevail. Plaintiff does not even mention § 523(a)(2) in its post-trial brief. Accordingly, Cadlerock has not explained why or how its claim against Debtor was obtained by false pretenses, false representations or fraud. Therefore, Cadlerock's allegations under § 523(a)(2) are meritless.

### V. CONCLUSION

The Court concludes that Plaintiff failed to prove by a preponderance of the evidence Debtor's fraudulent intent under § 727(a)(2)(A), § 727(a)(4) and § 523(a)(2). Plaintiff also failed to establish that Debtor failed to keep and preserve the necessary business records as required by § 727(a)(3). Debtor satisfactorily explained the lost value of his shares in the three business entities in question, thereby defeating Plaintiff's accusations, pursuant to § 727(a)(5). This opinion constitutes the Court's

---

27 In re Slyman, 234 F.3d 1081 (9th Cir. 2000).

findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

**ORDER**

For the reasons previously stated, this Court denies Plaintiff's objection to discharge and dischargeability and an appropriate judgment will be entered.

SO ORDERED.

San Juan, Puerto Rico, this 01 day of April, 2013.



Mildred Caban Flores
U.S. Bankruptcy Judge